Good morning everyone. Good morning Judge Ripple. Morning, how are you? Just want to make sure that everything is coming to you loud and clear. It certainly is. We're in good shape. Excellent. So today we're going to be looking at the case of Village of Itasca, case number 252010. Mr. Zuckerman. Good morning, Your Honors, and may it please the Court, Josh Zuckerman on behalf of the United States. I'd like to reserve three minutes for rebuttal. When Congress enacted Title II, it specified that the United States would play a central enforcement role in preventing discrimination. It copied language from the Rehabilitation Act, language that was long understood to give the United States a right of action. With the exception of the district court below and the now reversed district court in the Florida case, every court to have considered this question accordingly has concluded that the United States has a right of action to enforce Title II. The district court mistakenly held that there is no federal right of action under Title II because Uncle Sam isn't a person. But the United States is not arguing that it itself is a person alleging discrimination. In fact, the existence of a federal right of action does not turn on whether the Attorney General is a person alleging discrimination. Instead, as the 11th Circuit noted in Florida, the Attorney General's enforcement authority is derived from the fact that a federal lawsuit is a remedy, procedure, or a right made available to victims of discrimination under Title VI. The district court simply did not address this phrase, which is the operative phrase in Title II. Now, the parties agree that Title II incorporates the Rehabilitation Act, which in turn incorporates Title VI. Title VI allows the Attorney General to use any other means authorized by law to enforce its terms. Federal regulations passed around the time of Title VI explain that any other means include bringing appropriate proceedings in district court. Now, of course, we recognize that these regulations do not create a cause of action. The United States cannot give itself a cause of action via a regulation. As the Supreme Court has explained, only Congress can create a right of action. But the regulations merely acknowledge the United States' preexisting common law action prior to Title VI to sue to enforce the terms of federal grants. Does it matter that Title VI emanated from the Spending Clause, whereas Title II's power emanates from the Commerce Clause? No, Your Honor, that doesn't make a difference. The Supreme Court actually has addressed this issue in Barnes v. Gorman, footnote 3. The Supreme Court noted that the ADA could not be clearer that the remedies, procedures, and rights set forth in the Rehabilitation Act are the same as those in Title II, even though the Rehabilitation Act is Spending Clause litigation, and Title II, I believe, was passed under the 14th Amendment's enforcement power. I just want to make sure I understand the argument. So the argument is that while the procedures and remedies that were available were lifted from the Rehabilitation Act and Title VI, the limitations on the Congress' authority to regulate in that area were not? Yes, Your Honor, that's correct. So the Supreme Court in Barnes v. Gorman did explain that the explicit provisions in Title II make Title II status as a non-spending clause tort statute, quote, quite irrelevant. And I would address, Your Honor, to the Sixth Circuit's – I would direct, Your Honor, to the Sixth Circuit's opinion in Jones v. City of Detroit, which we cite in our brief. There, the Sixth Circuit observed that when Congress defines the remedies available in a statute, it overrides any default rule or background principle under the statute. And Title – excuse me, the Sixth Circuit further noted that the Americans with Disabilities Act creates customized remedies. So Congress was well within its rights to take a longstanding remedial scheme available under Spending Clause legislation and import it into the Title II context, even though Title II is not itself Spending Clause legislation. And that remedial scheme, in part because it's based on the Spending Clause, has some safeguards. It has the need to negotiate. It has the need to consider whether or not to strip funding before filing suit. That's not present in Title II. Oh, it's – that's correct, Your Honor. It's not present in the statute itself. But I think the regulatory history and statutory history is helpful here. So Title VI has implementing regulations that require the Department of Justice to take a few procedural steps before it files a suit. It must reach out to the offending party. It must attempt voluntary compliance after conducting an investigation. And in the event it wants to strip funding, again, under Title VI, it would have to notify the relevant committees of Congress. Now, Congress, when it passed Title II, was well aware that the Rehabilitation Act incorporated this scheme and that the Rehabilitation Act's coordination regulations passed by the Department of Health, Education, and Welfare in 1978 effectuated a similar means for compliance under the Rehabilitation Act. So Congress, when passing Title II – this is Section 1234 – instructed the Department of Justice to promulgate regulations that are consistent with the coordination regulations. The coordination regulations state that an agency, upon investigating the discrimination, could make a reference to the Department of Justice with a recommendation that appropriate proceedings be brought. Section 12134 would be completely pointless if the United States, under Title II, could receive a complaint from another agency, conduct an investigation, seek voluntary compliance, and then not take the last logical step in this process, which is filing a federal lawsuit. Is your ability to investigate and your ability to seek voluntary compliance meaningless if you can't go to court? I think so, Your Honor. It would be a very toothless power if the United States could conduct a years-long investigation, approach the defendant with findings of discrimination, and then ask for voluntary compliance. The defendant would just tell the United States, no, if you can't file suit, we have no incentive to comply with your investigation. I mean, there would have been evidence that was gathered. There would have been materials that could be turned over to a private party that clearly has the right to sue. Right, that is theoretically possible, Your Honor, but I think it's important to note in the context of disability discrimination, a private party is not necessarily able or willing to file a lawsuit. Many people with disabilities simply lack the funding or the knowledge that they have these rights. Haymarket, of course, is well-resourced, but that's, I think, a rare exception in the Title II context. Additionally, many people with disabilities face stigmas. I don't think any private plaintiff would want to go out and be the face of drug addiction in a high-profile lawsuit, and Congress may have very well had this in mind when creating a federal right of action. Mr. Zuckerman, you referenced the implementing regulations for Title II, including the 35.170 and following. They talk about agency investigation, about a referral, about a complainant. And I know that in the 11th Circuit case, all of those kind of preconditions took place. What about in this case? I don't see anything in the record about whether or not any of those regulatory preconditions were met in this case for Title II. Did all that happen? Yes, Your Honor, it did. So the United States began investigating the village a few months before this case was filed. The United States conducted a very thorough investigation. It reviewed an unprecedented volume of pages for a Title II lawsuit just due to the village's unprecedented number of hearings, reports, so on and so forth. And shortly after the United States concluded its intervention, it moved to intervene in this case. Did Haymarket file a complaint? Did any private individual or entity file a complaint as contemplated by 35.170? Your Honor, I believe Haymarket did in fact file a complaint with the Department of Justice. It would be HHS, right? I'm sorry, that may be correct. I do know that Haymarket did file a complaint with the federal government that either was directly filed with justice or referred to justice as contemplated by the regulations. Okay. And have there been attempts at reaching a voluntary compliance agreement with the village that failed as the regulations set forth? I believe so, Your Honor. So unless the panel has any additional questions about the United States' right of action under Title II, I would like to briefly turn to the other factors that weigh in favor of our intervention here. And Counsel, if you could start. Timeliness seems to be a bit of a concern because you just mentioned your investigation, and I understand your arguments in the papers that, well, you know, we should consider how complicated this is and allow some more time for intervention than we normally do. But what's the limiting principle there? I mean, there are other parties that are trying to resolve litigation. There's a district court that's trying to resolve this. If you're right and you have a cause of action, you could always bring it. But you're asking to intervene in a lawsuit that has gone through discovery. If you intervene, you may have a separate expert. I mean, this could significantly delay resolution of the party's claim. So, Your Honor, a couple of points are worth response to timeliness. First, the district court did not make any findings as to timeliness when denying the United States' intervention motion. And I think we could all agree if the district court was concerned about timeliness, that would have been the easiest way out. It could have just denied the United States' motion on that ground. It chose not to do so. And respectfully, I do think the United States' motion was timely here. Timeliness is assessed when the party moves to intervene, not when the motion is decided and not when the denial of the motion is appealed. This case was filed in January 2022. And in the district court, the local fire and school boards were defendants. Those defendants moved to dismiss, and the district court stayed discovery. And then I believe it did not decide that motion to dismiss for almost two years. Shortly after the district court did decide the motion, it reopened discovery, Haymarket amended its complaint, and approximately two months later, the United States moved to intervene. So, not much discovery actually happened between the filing of this lawsuit and the United States' motion to intervene. The main concern with timeliness is prejudice to the existing parties, and the existing parties would not suffer much if any prejudice if the United States is allowed to intervene. The United States, as we've discussed, did conduct a thorough investigation of the village. It therefore has all the documents it needs to proceed in this case. Expert discovery is still underway, and the United States, if allowed to intervene, is able and willing to fully comply with all existing discovery deadlines. And should this court reverse and the United States is allowed to intervene, if the district court does have concerns about discovery and prejudice, it is well within its rights to limit the scope of further discovery, and the United States is happy to agree to a reasonable discovery order in that sense. Can we talk about adequacy of representation? It seems to me that at least the way the regulations contemplate these proceedings arising is that you have a complaint that's filed with the agency. The agency investigates the complaint, tries to enter into some sort of agreement with the defendant or respondent, for lack of a better term, if the agency thinks there's something wrong, and then absent that, we refer to DOJ that would take appropriate action. It seems to me that those regulations contemplate that to the extent that DOJ is going to file an action, it's filing it really on behalf of the complainant who files the complaint. In some ways, it's very different from, say, the case of, I think, the EEOC, where the commission can file its own suit without a complaint. In this context, why can't Haymarket represent the interests of both itself and the United States with regard to this particular case? Your Honor, Haymarket and the United States do seek the same relief. Of course, our interests do align here. We believe that Haymarket is entitled by Title II to open its rehabilitation facility. By regulation, it has to align because the whole process is initiated when Haymarket starts the complaint. Yes, Your Honor, but just because the interests align, we don't think that that necessarily means a private party can always adequately represent the United States' interests. The United States has a general interest in enforcing anti-discrimination law, and a private party in a Title II case often simply wants to win its own case. It could settle on unfavorable terms. But isn't that the purpose of the complaint, though? I mean, as I said, under Title VII, where the commission can bring its own suit, I can see the argument that, in that case, the commission may be pursuing broader interests. Here, though, the authority to bring suit, based upon the framework that the government has suggested, is to vindicate the rights of the complainant. And so it seems like those two scenarios are a bit different. Right, Your Honor. So to briefly answer, because I see I'm eating into my rebuttal time. I'll give you a little bit more time. Thank you. I appreciate that. So we could imagine a situation, for instance, where a private party, similar to Haymarket, files a lawsuit, or files a Title II lawsuit, alleging discrimination by a village, is subject to an unprecedented amount of obstruction by the village, and then is hemorrhaging money and is simply fed up with the process and wants to settle. And the village could turn to a private party and say, we'll settle this case. You make a $3 million donation to our hospital. We'll let you open your facility. A private party might accept that deal. Now, that would not be in the United States' long-term interest, because it creates this not legal precedent, but at least practical precedent, that villages are allowed to extort facilities into giving up their Title II rights as long as they make a big donation to the village. But in that case, as Judge Kohler mentioned, the United States can file its own lawsuit, right? Right. Sure. So if there is an unfavorable settlement at one point, the United States could file a lawsuit after the settlement is reached, by which point this process takes years and years and years. And simply, it's far more efficient, and this is a large point of intervention itself. It's far more efficient for the United States simply to intervene in the existing suit. That's actually what motivated the United States here. We could have filed our own suit. We could have had parallel proceedings. Maybe they would have been consolidated before the same judge, maybe not. But we were just hoping to speed things up, reach a just and fair proceeding in a timely fashion by intervening. Thank you, Your Honors. Thank you. I'll give you a couple minutes on report. Thank you. Yes, let's hear now from the appellee. Mr. Matthews, is that correct? It is. Not everyone gets a right, so thank you. May it please the court, and good morning. I am David Matthews, and I represent the village of Itasca. Now, the underlying litigation that led to ultimately the government's motion to intervene in this appeal has given us 350,000 pages of documents, over 50 depositions, 13 or 14 experts, litigation over four years in front of Judge Seeger, and that doesn't even count the zoning proceedings. So to call that complicated would be a bit like calling our current spell of weather a little bit chilly. But this particular appeal and the reasons why this court should affirm is nowhere near that complicated. There are fundamentally two issues. There's the question of permissive intervention and the question of intervention by right. I'm going to turn first to intervention by right under Rule 24a. And really, there's broader ways and narrower ways for this court to affirm Judge Seeger. The broader way is to address whether the government has an interest in the subject matter. That's captured a lot of attention. It's worth the 11th Circuit divided on. Does the government have standing, given the all-important point that Title I and Title III are different than Title II, and which of these things is not like the other? But there's also narrower ways that don't create a circuit split, and so I'm going to focus on those first. Timeliness and adequacy of representation. The court is 100% right that there is an inherent tension in the government's argument when it comes to adequacy of representation. 100% correct. Because the government wants to say simultaneously that one of the remedies that a person, which they admit does not include the government, can get is to call in the cavalry and have the government intervene on your behalf and bring in Mike Tyson to help you out. But at the same time, under adequacy of representation, the government wants to say, no, we're not here to represent the interest of the individual. We're here to represent this broader interest in enforcing federal law. There's significant tension there, and that's the kind of tension that comes from trying to avoid the plain language of the statute. Now, counsel for the United States made some points that in other cases might be persuasive. They pointed out, what if in some case a private party wants to settle for the proverbial plate of chopped liver? What then? Well, in that case, as the district court pointed out, as may be true in many cases, permissive intervention may make a lot of sense. But that is not the facts in this case. There's no dispute that Haymarket wants the same remedies as the United States, and there's also no dispute that Haymarket is more than capable of, as the district court put it, sticking up for itself. In an awful lot of cases, it's easy to imagine circumstances where that would be different. And if it was different, not only might intervention of right turn out differently, but certainly permissive intervention, which in any case would be available, would turn out differently. Now, when it comes to timeliness, which ultimately probably is the easiest way to resolve the case, the court can affirm on any grounds supported by the record whether or not the district court decides them. So nothing prevents this court from affirming on the Rule 24a issue based on timeliness. And what we know is that as early as December 2020, we know this from the privilege log, and if you want to look at the district court docket, it's dockets 161 and 162, where there's some ongoing litigation about that, that in December 2020, the government and Haymarket are coordinating about litigation strategy. We know that the government opens their investigation in November of 2021. They get documents in February of 2022, but it's two and a half years after the investigation begins. It's three and a half years approximately from the time they're talking about litigation strategy to the time they move to intervene. The government's argument is really little more than no harm, no foul. Let's take the time out of timeliness. We cited two cases, State v. City of Chicago and City of Bloomington, where less than a year was considered untimely. The government points to Cameron, which is a United States Supreme Court case, which says timeliness matters on context. And the facts there really explain what's going on. That's an abortion statute case where one branch of government's defending it, there's a change in political power after an election, and that branch of government doesn't want to defend the statute anymore, but a different branch of government wants to defend the statute now. And the Supreme Court said there, the Attorney General, and this is 595 U.S. 280, the Attorney General sought to intervene two days after learning that the Secretary would not continue to defend the statute. So if something happens, if Haymarket were to proverbially want to settle for a plate of chopped liver and the government would want to intervene, timeliness at least is no longer an issue. That's the point of Cameron. That's not what happened. And as to prejudice, Your Honors, we would submit that the parties are prejudiced in the same way that a baseball team is prejudiced if the other guys get to scout your team but you can't scout their team. The government has had the ability to sit on the sidelines, watch everything develop, and saying that that doesn't count as prejudice is certainly encouragement to sandbagging. So I would submit that you could affirm denial of intervention by right based on adequacy of representation or timeliness. And there is a way to—I'm sorry, Your Honor? Mr. Matthews, what do you make of the government's argument with regard to timeliness that they filed their motion to intervene shortly after the filing of the lawsuit? I think it's—I don't make much of it, Your Honor. I think that it's still two and a half years after they started their investigation and just because discovery was on pause, there's no reason for them to wait that long and we know they were communicating and they don't deny they were communicating with Haymarket for a long time before that. And how much time—and can you remind me? Sorry. How much time passed between the filing of Haymarket's complaint and the government's motion? Approximately two and a half years. It could have been a little less than that, but that's approximately two and a half years, Your Honor. And if I'm off by a few months one way or the other, that doesn't matter because the cases that we cited, the time there was a year. When it comes to sort of the big issue is their standing, I'd like to remind the court of another Title I—another, excuse me, ADA case. That's Stanley v. City of Sanford, Florida. It was decided last year by the Supreme Court. It's a Title I case. It's a different set of facts, but they're talking specifically to the ADA, not statutes in general, but to the ADA. The Supreme Court says—makes the point that's in Rusello, that's the centerpiece of our brief—different words in the same statute should mean different results. And it's for the court to give effect to Congress's choices rather than to gloss over them, even if doing so might lead to what some people would consider to be a very good result. The United States, I think, made an important concession. They pointed out and acknowledged, and to their credit, the government can't give itself a cause of action by regulations. If this chain of cross-references pointed back to a statute and in the statute it said the Attorney General could file a lawsuit, I'd have an argument, but it would be a lot weaker. But that's not what the statute says. They're cross-referencing multiple statutes, and even the statutes don't give cause of action. And fundamentally, there's a lot of appeals to context. There's a lot of appeals to legislative history. But at the end of the day, none of that matter is given the plain language of the statute and the difference between Titles I, II, and III. I'd like to hit two other— So what is your argument that Title VI doesn't provide the government with a cause of action? I thought that that was something that everyone had agreed to. Title VI does. I think the shortest answer, Your Honor, is the Supreme Court said so. That's probably the shortest answer. But the circumstances of the passing of Title VI are different, but also Title VI doesn't present the same, which of these things are not like the other question. And so the analysis—and we agree that as a matter of what the law is, Title VI does give the government a cause of action. We can argue different reasons why that might be. But the single biggest difference I would draw the Court to between—and why we're not challenging Title VI— is you don't have the dichotomy between two parts of the statute that say, very clearly, a person plus the Attorney General, and one that doesn't. When it comes to permissive intervention, I just want to underscore this is a familiar issue to this Court. There's a call, and there's another case, Boast, that came to the Court recently. The arguments the government makes are very similar to the arguments that didn't carry the day there. The District Court's analysis is very similar to the analysis that the District Court in those cases made and that this Court approved of. The only case the government cites where a denial of permissible intervention was reversed is an election law case out of the Sixth Circuit. It's not binding precedent. In an election law case, in that case, there's no indication that the District Court said anything about discovery whatsoever. It appears that he or she may not have considered it. He or Judge Seeger did. The government just doesn't agree with how Judge Seeger weighed it. In many, many cases, permissive intervention could be okay. To return back to the issue of broadly enforcing federal law, the argument they make in that case, if you accept it, it proves too much. They can always intervene in a federal question case because they can always assert that kind of interest. One of your honors made the point of where is the limiting principle. The answer is there isn't much of one because if that's good enough, it always counts. The District Court considered prejudice to the parties, which in this case would be my client of the village of Itasca. The government seems to suggest that somehow that's dubious to say in suggesting the government can't enforce Title II. But the rule itself says consider prejudice to the parties, not just from having to litigate against the government, but from the government coming in later. I want to make two final points, your honors, and then of course answer any questions that you all have. One of them deals with the scope of discovery that we heard a little bit from at the very end of the government's argument. One of them deals with the consequences of a ruling, especially if your honors were to agree with Judge Seeger that the government doesn't have standing under Title II. So when it comes to discovery, everything that the government just said in front of your honors – and maybe they recently came to that conclusion, so I'm not suggesting any kind of foul play – but none of that was ever presented to Judge Seeger. None of it was presented to Judge Seeger. Nothing stopped the government in their motion for permissive intervention from saying, hey, we would like to intervene because we administer this statute and the rule says we can have permissive intervention. We don't want to bog this big case down. They could have said, we're not asking for additional documents. We're not asking to have any of our own experts. We're not asking to take depositions. All we're asking is to attend depositions, to ask questions within the seven-hour limit, and to file our own briefs. They never presented anything like that to Judge Seeger. And so I don't think those arguments really hold a lot of water, and the risk of disrupting the case if this gets sent back down is fairly high. Now, the government started with the argument, and their reply brief starts with the argument that public entities sometimes have in the past, and unfortunately in some cases we certainly deny it in this case, but it does happen where discrimination happens. And yes, the government has an enforcement role. But the subtext from the government is we can intervene in any Title II case as a matter of right or nothing, and I respectfully, respectfully submit to your honors that's not quite right. There are a lot of remedies. The first and most powerful is a private right of action. Your honors have pointed that out. It's very effective. The reason we have an attorney's fee provision in Section 1988 is because Congress says a private right of action is a very powerful remedy to serve both the individual and the public. That's always available. And again, if you have someone who, as the government, is correct, sometimes some folks who believe they are victims of discrimination don't have the resources that Haymarket does. And if they don't, that's a great case for permissive intervention. It's not this case. The government has the power of the purse. I don't think you have to agree with the spending clause argument to affirm. I think there's some weight to it. But regardless of whether you agree with that or not, when there's federal funds at issue, there's no debate they have that power. If it's a government property or they're a party to the transaction, which given the government's involvement in care for folks with disabilities, that's going to happen a lot, they can get involved. They can always seek permissive intervention. And ultimately, at the end of the day, if the government believes that none of that is good enough, they can go back to Congress. Regardless of what your honors rule, Congress has overruled courts in before, and they will do so in the future. And we would respectfully submit that you should affirm, you should find the government doesn't have standing because that's the statute Congress wrote. And we should give effect to the fact that Titles I and III are different than Title II. You should also affirm that the government waited several years and they were untimely. And there's the issue of adequacy of representation. And discretionary is a fairly easy call, and so we would ask this court to affirm. Thank you for your time. Mr. Matthews, before you go, with regard to the administrative proceedings that took place in this case, do you agree with the government that all of the preconditions set forth in the implementing regulations have been met? So first of all, in candor, your honor, none of this is in the record. And I was not as involved in the litigation as my colleague, Ms. Wysocki, who left for a different job. So I'm not 100 percent sure. The best thing I can say is that I'm skeptical. I know that the only compliance involved was a relatively short phone call. If Haymarket made a complaint, it's not in the record, at least not in the record before this court. And was that presented? And do you know, having reviewed the district court record, do you know whether the government presented those facts to the district court in the motion intervened? I do not believe that they did. And I don't believe they made that argument on appeal. Certainly nowhere near the degree of process and safeguards that Judge Kollar was talking about. Maybe there was some process, but certainly not as though this was a proceeding under the Rehabilitation Act. Any other questions, your honors? Thank you for your time. Thank you. Mr. Zuckerman, we'll give you two minutes. Thank you, your honor. Your honor, just a few brief points in rebuttal. First, counsel for the village did point out that the United States did not make these arguments about limiting discovery, a lack of a need for discovery, and so on at the time it moved to intervene. And that's correct, and that's because the United States did not need to make these arguments. At the time the United States moved to intervene, discovery had just been reopened after a two-year stay. And had the United States' motion been granted, it could have fully participated in discovery without any delay. I think that delay point leads to my second point, which is timeliness. Timeliness is mainly a function of prejudice. It is assessed at the time of the motion, and at the time the motion was filed, again, discovery had just been reopened, and there would have been no prejudice to the existing parties. Now, of course, if this motion is granted now, counsel for the village is concerned that it has not yet had the opportunity to seek discovery from the United States. We think that concern is a little bit overblown. The United States is very unlikely to have any information relevant to a dispute between two private parties that the two private parties have not already obtained. But that is something the district court can sort out on remand. It could enter an extension of time, a brief one if needed, or it could otherwise provide for the village to seek discovery from the United States. Counsel for the village also pointed out the textual distinctions between titles 1, 2, and 3. Now, it is correct, of course, that title 2 does not specifically mention the attorney general, but titles 1 and 3 do. There's good reason for that. Title 1 incorporates title 7 of the Civil Rights Act, which divides enforcement authority between the attorney general and the EEOC. Congress had to name the attorney general in title 1 to confirm that this division of labor still exists. And in title 3, unlike titles 1 and 2, there's a new remedy here, the remedy to seek civil penalties. That did not exist before, so the United States—excuse me, Congress had to mention the attorney general by name to make clear that she is the one who has the right to seek these penalties. And, Your Honors, I see that I'm out of time, so I would ask the district court to reverse and remand. Thank you. Thank you. The case will be taken under advisement.